UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. MICHELE CLARKE, TRICIA MULLINS and KRISTI WINGER SZUDLO, | **LEAVE TO FILE GRANTED ON JUNE 14, 2018** |
| Plaintiffs | |
| v. | C.A. No. 1:13-cv-11785-IT |
| AEGERION PHARMACEUTICALS, INC., et al. | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT DAVID SCHEER'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

RELEVANT BACKGROUND .......................................................................................1

RELEVANT PROCEDURAL BACKGROUND AND PUBLICATION OF
INFORMATION RELATED TO THIS ACTION BY THE GOVERNMENT.............................2

ARGUMENT ...................................................................................................................4

I.      FCA CLAIMS BARRED BY PUBLIC DISCLOSURE RULE .........................................4

        A.      Relators' Claims Against the New Defendants Are Barred by the
                Public Disclosure Rule.............................................................................4

        B.      Relators Do Not Qualify for the Original Source Exception to the
                Public Disclosure Bar ..............................................................................5

II.     RELATORS FAIL TO SATISFY RULE 9(B)............................................................7

        A.      Relators Fail to Allege With Particularity any Link Between Scheer
                and the Alleged Fraud. ............................................................................7

        B.      Relators Fail to State a Claim Against Scheer Because They do Not
                Allege That Any Act by Scheer Was Material to the Submission of
                Any False Claim .......................................................................................8

        C.      Relators Fail to Allege Facts That Scheer Entered into an Agreement
                to Defraud the Government or Took Any Overt Act in Furtherance of
                the Alleged Conspiracy............................................................................8

III.    RELATORS FAIL TO STATE A CLAIM AGAINST SCHEER BECAUSE
        THEY FAIL TO SUFFICIENTLY ALLEGE ALL MATERIAL ELEMENTS
        OF THEIR CLAIMS......................................................................................9

        A.      Relators Fail to Allege Facts Demonstrating That Scheer Had the
                Requisite Scienter to Commit the Alleged Fraud ...................................9

        B.      Scheer is Not Liable for Any Misconduct of Aegerion. .......................10

CONCLUSION...............................................................................................................10

Certificate of Compliance with Local rule 7.1(a)(2) ................................................11

Certificate of Service ...................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................8

*Gross v. Summa Four, Inc.*,
  93 F.3d 987 (1st Cir. 1996)....................................................................................9

*United States ex rel. Ciaschini v. Ahold USA, Inc.*,
  282 F.R.D. 27 (D. Mass. 2012)..............................................................................8

*United States ex rel. D'Agostino v. EV3, Inc.*,
  153 F. Supp. 3d 519 (D. Mass. 2015), *aff'd sub nom. D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016)...........................................................................4, 9, 10

*United States ex rel. K&R Ltd. P'ship v. Massachusetts Housing Fin. Agency*,
  456 F. Supp. 2d 46 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008) ..............10

*United States ex. rel. Kelly v. Novartis Pharm. Corp.*,
  827 F.3d 5 (1st Cir. 2016).......................................................................................5

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) on remand to *United States ex rel. Escobar v.
  Universal Health Servs., Inc.*, 842 F.3d 103 (1st Cir. 2016) ...............................9, 10

*U.S. ex rel. Leysock v. Forest Labs., Inc.*,
  55 F. Supp. 3d 210 (D. Mass. 2014) ......................................................................8

*U.S. ex rel. Ondis v. Woonsocket*,
  587 F.3d 49 (1st Cir. 2009)............................................................................4, 5, 6

*U.S. ex rel. Osheroff v. Humana, Inc.*,
  776 F.3d 805, 814 (11 Cir. 2015)...........................................................................4

*U.S. ex rel. Poteet v. Bahler Med., Inc.*,
  619 F.3d 104 (1st Cir. 2010)...................................................................................4

*U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
  750 F.3d 111 (1st Cir. 2014)...................................................................................5

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ...........................................................................................9

31 U.S.C. § 3729(b)(1) ...........................................................................................................9

31 U.S.C. § 3730(e)(4)(A) .....................................................................................................4

31 U.S.C. § 3730(e)(4)(B) .....................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................................7, 8, 9

Fed. R. Civ. P. 12(b)(6)..........................................................................................................10

## RELEVANT BACKGROUND

On May 12, 2016, Aegerion announced that it was resolving false claims allegations for a total of $40,000,000 (forty million dollars). Second Amended Complaint ("SAC") ¶ 138. On September 22, 2017, that deal was finalized with resulting press from the government. On September 27, 2017, *after* the government completed its investigation of Aegerion; *after* the government settled with Aegerion and received a forty million dollar settlement; and *after* both the Department of Justice and the Securities and Exchange Commission had published reams of documents detailing the false claims case they were resolving, the Relators decided to add six defendants to this *qui tam* action, ostensibly to help the government identify and rectify false claims made against it – the very false claims it had already pursued.

Naming new defendants *after* this gusher of information became public in no way assisted the government to pursue its false claims case.[1] The case against them should be dismissed on that ground alone.  The facts necessary for Relators' claims were known long before the original complaint was filed in July 2013, and certainly before David Scheer and the other new defendants were added to this action on September 27, 2017.

From 2004 through 2016, Mr. Scheer was a member of the Board of Directors of Aegerion Pharmaceuticals, Inc.  ("Aegerion"). SAC ¶ 20. Mr. Scheer is mentioned only once in the original complaint and only once again in the First Amended Complaint ("FAC"), each time to identify him as the Chairman of the Board of Aegerion. *See* Original Complaint ¶ 68; FAC ¶

---

[1] In fact, the essence of the original and first amended complaints also relies on facts that had been public long before the complaints were filed.  Even the minute details of the case were known, however, before Mr. Scheer was named as a defendant.

71. This information was public, however, and was even included in a press release by
Angiochem on June 2, 2010.[2]

### RELEVANT PROCEDURAL BACKGROUND AND PUBLICATION OF INFORMATION RELATED TO THIS ACTION BY THE GOVERNMENT

Relators filed their original complaint in this action on July 23, 2013. *See* SAC ¶ 26;
Original Complaint. On March 18, 2014, Relators filed the FAC against Aegerion, Mark Beer,
Greg Fenner, and Craig Fraser (collectively, the Original Defendants), Dkt. No. 12, in which
Relators essentially alleged that the Original Defendants participated in a scheme to market and
sell Juxtapid off-label to patients who did not actually have HoFH, despite the FDA limiting its
approval of the drug to patients with HoFH, and knowingly causing false claims for
reimbursement of these prescriptions to be submitted to the U.S. government, FAC ¶¶ 2-6, 9.

On September 22, 2017, the Department of Justice ("DOJ") issued detailed press releases
announcing that Aegerion had agreed to pay over $35 million to settle criminal and civil claims
related to an alleged off-label marketing scheme involving Juxtapid.[3]  Included in the press
releases was a detailed summary of Relators' claims and theory of liability in this action and
resulting settlement between Relators, the government and Aegerion. *Id.* For example, the Office
of Public Affairs Press Release states:

> Aegerion will pay $28.8 million over three years to resolve federal and state civil
> liability for causing false claims for Juxtapid to be submitted to government
> health care programs (Medicare, Medicaid, and TRICARE) arising from its
> promotion of Juxtapid for patients without a diagnosis of, or consistent with,

---

[2] *Angiochem Appoints David Scheer to its Board of Directors*, ANGIOCHEM (Jun. 2, 2010), *available at*
http://angiochem.com/angiochem-appoints-david-scheer-its-board-directors ("[Scheer's] current board relationships
include . . . Aegerion Pharmaceuticals, Inc. (of which he is Chairman) . . . .").
[3] *Drug Maker Aegerion Agrees to Plead Guilty and Pay $35 Million to Resolve Criminal Charges and False Claims
Act Allegations*, DOJ, (Sept. 22, 2017), *available at* https://www.justice.gov/usao-ma/pr/drug-maker-aegerion-
agrees-plead-guilty-and-pay-35-million-resolve-criminal-charges-and ("U.S. Attorney's Office Press Release");
*Drug Maker Aegerion Agrees to Plead Guilty; Will Pay More Than $35 Million to Resolve Criminal Charges and
Civil False Claims Allegations*, DOJ, (Sept. 22, 2017), *available at* https://www.justice.gov/opa/pr/drug-maker-
aegerion-agrees-plead-guilty-will-pay-more-35-million-resolve-criminal-charges-and ("Office of Public Affairs
Press Release").

> HoFH; false and misleading statements to doctors that the use of Juxtapid was appropriate in patients with symptoms including high cholesterol, irrespective of whether such patients had a diagnosis of HoFH and despite counter-indications to a diagnosis of HoFH; and alteration or falsification of statements of medical necessity and prior authorizations that were submitted to federal health care programs.

The U.S. Attorney's Office Press Release contains similar information. Attached to these press releases, the DOJ posted several other related documents, including Aegerion's plea agreement, in which Aegerion agreed to cooperate with the government in its investigation of any matter by making available documents and present and former officers, directors, and employees to give testimony and interviews, and by providing active assistance in pursuing investigations against present or former office, director, or employee of Aegerion.[4] Also on September 22, 2017, the SEC posted Relators' settlement agreement with Aegerion, in its entirety, on its website.[5] The settlement details Relators' claims in this action that "Aegerion knowingly caused false or fraudulent claims for Juxtapid to be submitted to the Federal health care programs." Settlement Agreement at 1-6; *see also* SAC ¶ 7.

On September 27, 2017, after the government's public announcement of information about Aegerion's settlement of Relators' civil claims and other related matters, Relators filed the SAC, adding defendants Melanie Detloff, William Dull, Mark Fitzpatrick, James Frigge, David Scheer, Dr. Mark Sumeray, and UPenn as defendants (the "New Defendants"). *See* SAC at 1.

---

[4] Letter from DOJ to Joshua S. Levy, § 8, DOJ, (Sept. 22, 2017), *available at* https://www.justice.gov/opa/press-release/file/998166/download, ("Aegerion Plea Agreement").

[5] *Settlement Agreement*, SECURITIES EXCHANGE COMMISSION, *available at* https://www.sec.gov/Archives/edgar/data/827809/ 000110465917058482/a17-22273_1ex10d2.htm ("Settlement Agreement").

ARGUMENT

## I.    FCA CLAIMS BARRED BY PUBLIC DISCLOSURE RULE

### A.    Relators' Claims Against the New Defendants Are Barred by the Public Disclosure Rule.

By the time the new defendants were added, the scheme alleged by Relators, i.e. that Aegerion marketed and sold Juxtapid off-label to patients without HoFH, despite it being approved only for HoFH patients, had been in the public domain for many years.  Moreover, Relators' entire false claims theory had been publicized by the company and in DOJ press releases and by the Securities Exchange Commission ("SEC").[6]  Thus, the public disclosure doctrine bars the SAC due to the publication of the fraudulent transaction alleged in this action prior to the filing of the SAC.[7] 31 U.S.C. § 3730(e)(4)(A) ("The court **shall** dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . ."); *United States ex rel. D'Agostino v. EV3, Inc.*, 153 F. Supp. 3d 519, 531 (D. Mass. 2015), *aff'd sub nom. D'Agostino v. ev3, Inc.*, 845 F.3d 1 (1st Cir. 2016) ("[P]ublic disclosure occurs when the essential elements exposing the particular transaction as fraudulent find their way into the public domain.") (citing *U.S. ex rel. Ondis v. Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009)); *see also U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 814 (11 Cir. 2015) (amended complaint was substantially the same as publicly disclosed information because it shared the same "essential allegation").  Allowing this suit to proceed against defendants who were added at this late stage would be contrary to the purpose of a *qui tam* action. *See U.S. ex rel. Poteet v. Bahler Med., Inc.*,

---

[6] Relators themselves admit that "Following the federal government's investigation, on May 12, 2016, it was announced that Aegerion would pay $40 million over five years to settle allegations of off-label marketing to the United States."  SAC ¶ 138.

[7] Relators make the perfunctory statement that they "sent further notice to the United States government and the Plaintiff States of additional false claims alleged in this Second Amended Complaint on or about July 27, 2017," SAC ¶ 26, but that was 15 months after the settlement was announced. Relators do not allege that they disclosed any particular facts about Mr. Scheer to the government.

619 F.3d 104, 111 (1st Cir. 2010). *Compare U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 118 (1st Cir. 2014) (a "later-filed complaint that mirrors the essential facts as the pending earlier-filed complaint does nothing to help reduce fraud of which the government is already aware"); *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 11 (1st Cir. 2016) (this principle applies equally to the original relator as to a new relator).

The new allegations that Relators added in the SAC merely propose that Mr. Scheer, as a board member and founder of Aegerion and trader of Aegerion stock, could have known about and/or been involved in the alleged false claims related to Aegerion's drug, Juxtapid. *See e.g.*, SAC ¶¶ 77, 196-97, 199.  Mr. Scheer's role within the company had been publicly disclosed in 2010, before Mr. Scheer was added as a defendant, and the government could have pursued him *sua sponte* without Relators' assistance. The allegations with respect to Mr. Scheer add nothing materially new to the alleged fraudulent scheme that already had been in the public domain for years. It would be contrary to the purpose of the FCA to allow Relators to continue to amend the complaint *ad infinitum* to add new members of Aegerion, after the government and Relators have settled their claims with Aegerion, based on the same fraudulent scheme alleged in prior complaints years ago. Relators' claims against Mr. Scheer must be dismissed.

> **B.      Relators Do Not Qualify for the Original Source Exception to the Public Disclosure Bar.**

Relators cannot salvage their claims by arguing that they were an "original source" of the information under 31 U.S.C. § 3730(e)(4)(B). *Ondis*, 587 F.3d at 53-54. As discussed in more detail in the Joint Memorandum, Relators cannot satisfy the first type of original source because they disclosed to the government the essential elements underlying the claimed fraudulent scheme *after* they were already publicly known. The new facts that they do include do not "materially" add to the publicly disclosed allegations or transactions. While Relators include

some color and detail in the Second Amended Complaint, the essential facts underlying the basis for their claim of fraud already were widely known by the public prior to their initial talks with the government, and were broadcasted in detail on September 22, 2017, when the government publicized the settlement with Aegerion and details about the alleged fraudulent scheme. Information about Mr. Scheer's role within the company and trading activity also were in the public domain years before the SAC was filed.

Expertise that enables a relator to understand the significance of publicly disclosed information, without more, is insufficient to qualify him as an original source. *Ondis*, 587 F.3d at 54-55. Just because Relators were former employees of Aegerion and had insight into how the company was run and by whom does not by itself make Relators original sources of the information. The FDA knew through meetings dating back to 2007 that Aegerion had plans to pursue a marketing plan outside of the patient population actually diagnosed with HoFH, SAC ¶¶ 50, 54, 57, 58, 62, and the news media provided detailed coverage of Aegerion's marketing plans with respect to Juxtapid and the HoFH population. The government did not need Relators to tell it in September 2017 that Mr. Scheer was Chairman of the Board and because of his role, would have been present at the Juxtapid launch meeting — that information had been publicly disclosed in the media as of 2010 and April 2013 — and traded the company's stock, which Mr. Scheer reported to the SEC. Because they were in the public domain, none of these facts would have been new to the government, and even if they were, they do not materially add to the fraudulent transaction which indisputably already existed in the public domain.

## II.     RELATORS FAIL TO SATISFY RULE 9(B)

### A.     Relators Fail to Allege With Particularity any Link Between Scheer and the Alleged Fraud.

With respect to Defendant Scheer, Relators do not come close to meeting the particularity standard required by Fed. R. Civ. P. 9(b) for their fraud claims. Of the few allegations in the SAC specifically referencing Mr. Scheer, the vast majority are conclusory and speculative. Relators do not allege any specific facts that would link Mr. Scheer to the alleged fraud. Their bald accusation that Mr. Scheer had an "off-label agenda" is not supported by any alleged facts. SAC ¶ 197. Relators instead ask the Court to hold Mr. Scheer liable for fraud based solely on his role in forming Aegerion, his position on the company's Board of Directors, his attendance at the Juxtapid launch meeting where he "would have" heard a presentation titled the "Art of Not Defining HoFH," and gains earned from trading Aegerion stock. SAC ¶¶ 20, 43-48, 77, 197-98. Relators also take issue with Mr. Scheer's gains from the trading of Aegerion stock. *Id.* ¶ 199. They claim that these profits are "evidence that Scheer condoned and encouraged the illegal activity of other Defendants in this case." *Id.* Apparently, they believe that selling stock is ipso facto evidence of fraud. This would break new legal ground. These allegations fail to satisfy Rule 9(b).

As discussed in the Joint Memorandum, not only do Relators fail to identify a single particular false claim, but the SAC is completely devoid of ***any*** facts showing a connection between Mr. Scheer and the submission of a false claim, even if one had been particularly alleged. Relators' claims against Mr. Scheer fail on that basis alone.

Relators are not entitled to application of the more flexible particularity standard applicable to indirect false claims because they have not alleged that Mr. Scheer, or any other

defendant, induced any third parties to submit false claims. There is no allegation in the SAC that Mr. Scheer even interacted with any individual outside of Aegerion.

**B.      Relators Fail to State a Claim Against Scheer Because They do Not Allege that Any Act by Scheer Was Material to the Submission of Any False Claim.**

There is no allegation in the SAC that Mr. Scheer made any fraudulent representation which could have affected the government's payment decision in any way. The conclusory allegations in the SAC aimed at all defendants, including Mr. Scheer, are insufficient to meet the demanding materiality standard. *See* SAC ¶¶ 162, 203, 208.

**C.      Relators Fail to Allege Facts That Scheer Entered into an Agreement to Defraud the Government or Took Any Overt Act in Furtherance of the Alleged Conspiracy.**

A conspiracy claim under the FCA cannot survive a motion to dismiss if it does not allege "(1) who the co-conspirators are, (2) when or where they entered into an agreement, or (3) what overt acts they took in furtherance of the conspiracy." *U.S. ex rel. Leysock v. Forest Labs., Inc.*, 55 F. Supp. 3d 210, 221 (D. Mass. 2014). Relators fail to state a claim for conspiracy against Mr. Scheer.

Relators merely allege that: "Scheer conspired with the other Individual Defendants to establish Aegerion as a company ostensibly serving the needs of the HOFH population, but all the while the goal of the conspiracy was to sell Juxtapid into the off-label market knowing that any claims for government reimbursement would be false claims." SAC ¶ 196. This conclusory allegation does not satisfy the particularity standard of Rule 9(b) or Rule 8. *United States ex rel. Ciaschini v. Ahold USA, Inc.*, 282 F.R.D. 27, 37 (D. Mass. 2012) ("Without specific information, [an] allegation of conspiracy is a mere label or legal conclusion entitled to no weight."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The SAC lacks any allegation of an agreement between Mr. Scheer and the other defendants, much less when or where that agreement was

memorialized. Likewise, Relators fail to allege any overt acts that Mr. Scheer took in furtherance

of the alleged conspiracy.

## III.   RELATORS FAIL TO STATE A CLAIM AGAINST SCHEER BECAUSE THEY FAIL TO SUFFICIENTLY ALLEGE ALL MATERIAL ELEMENTS OF THEIR CLAIMS

### A.   Relators Fail to Allege Facts Demonstrating That Scheer Had the Requisite Scienter to Commit the Alleged Fraud.

Relators fail to plead any facts showing that Mr. Scheer had the necessary scienter to

commit fraud. A defendant can be liable under the FCA only where that defendant "knowingly . .

. causes to be presented a false or fraudulent claim for payment or approval." 31 U.S.C. §

3729(a)(1)(A). To meet the pleading requirement for scienter, a complaint must allege that the

defendant either "ha[d] actual knowledge" of the claim's falsity, or acted with "deliberate

ignorance" or "reckless disregard" to the falsity of the claim. *Id.* § 3729(b)(1). The United States

Supreme Court recently described the FCA's scienter requirement as "rigorous." *Universal*

*Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996, 2002 (2016), *on*

*remand to United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st

Cir. 2016). "A relator does not satisfy the requirements of Rule 9(b) merely by pleading 'fraud

by hindsight.'" *D'Agostino*, 153 F. Supp. 3d at 532 n.29 (quoting *Gross v. Summa Four, Inc.*, 93

F.3d 987, 991 (1st Cir.1996)) ("[A] general averment that defendants knew earlier what later

turned out badly does not convey the necessary particularity that Rule 9(b) requires.").

Relators do not allege any specific facts demonstrating that Mr. Scheer had actual

knowledge of any false claim. Relators' conclusory allegation that he did is not supported by any

facts alleged. For example, Relators admit that submission of false claims may *not* have been Mr.

Scheer's goal, but allege that due to his status as a founder, Chairman of the Board, and one of

two Class 3 directors of Aegerion, he "**would have known** that Aegerion could not have achieved

its peak sales, in excess of the entire patient population in the United States, without trespassing into off-label marketing." *Id.* ¶ 196 (emphasis added).  This allegation says nothing about Mr. Scheer's actual knowledge of a false claim.

"The presence of a motive cannot substitute for evidence of knowledge and intent" in the *qui tam* realm." *United States ex rel. K&R Ltd. P'ship v. Massachusetts Housing Fin. Agency*, 456 F. Supp. 2d 46, 62 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008); *see also Universal Health*, 136 S. Ct. at 2002. Relators allege that Mr. Scheer is liable for making, or causing to made, false claims by "pursuing his off-label agenda through his stewardship of Aegerion" based solely on his role within the company and gains from trading Aegerion stock. SAC ¶ 197. Again, this assumed motive is not a factual allegation about Mr. Scheer's ***actual knowledge*** of a false claim. Relators' rampant assumptions and conclusory allegations are insufficient to state a fraud claim against Mr. Scheer. Fed. R. Civ. P. 12(b)(6).

### B.     Scheer is Not Liable for Any Misconduct of Aegerion.

As an Aegerion Board member, Mr. Scheer is not liable for any misconduct of Aegerion merely by virtue of his position. Relators make no claim that Mr. Scheer acted *ultra vires* or outside the scope of his role as a member of the Board or took any action personally with respect to the alleged false claims. *See, e.g.*, *D'Agostino*, 153 F. Supp. 3d at 540-41 & n.41. Relators and the government already have settled their claims with Aegerion – they should not be allowed to seek double recovery through Mr. Scheer for conduct attributable to the company.

### CONCLUSION

The Court should grant Defendant Scheer's Motion to Dismiss and dismiss all claims against him with prejudice.

DAVID SCHEER,

/s/ Stephen G. Huggard
Stephen G. Huggard (BBO # 622699)
    Stephen.huggard@lockelord.com
Katherine A. Guarino (BBO # 681848)
    Katherine.guarino@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone:    (617) 239-0100
June 19, 2018                      Facsimile:    (617) 227-4420

## Certificate of Compliance with Local Rule 7.1(a)(2)

I certify pursuant to Local Rule 7.1(a)(2) that on June 7, 2018 counsel for Defendants conferred with counsel for Plaintiffs to attempt to resolve or narrow the issues in this motion.

/s/ Stephen G. Huggard
Stephen G. Huggard

## Certificate of Service

I, Katherine A. Guarino, hereby certify that, pursuant to Local Rule 5.2(b)(2), on this 19th day of June, 2018, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing.

/s/ Stephen G. Huggard
Stephen G. Huggard

AM 68860781.6