UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al. ex rel.* CLARKE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AEGERION PHARMACEUTICALS, INC., *et al.*, <br><br> Defendants. | Case No. 1:13-CV-11785-IT <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Leave to file granted on June 14, 2018 |

**DEFENDANT MARK FITZPATRICK'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION TO DISMISS RELATORS' SECOND AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

BACKGROUND AS TO MR. FITZPATRICK .............................................................................. 2

    I.      TIMING OF ALLEGATIONS IN THIS *QUI TAM* ACTION ...............................2

    II.     ALLEGATIONS CONCERNING MR. FITZPATRICK .......................................2

ARGUMENT ....................................................................................................................... 3

    I.      RELATORS DO NOT SUFFICIENTLY ALLEGE THAT MR. FITZPATRICK ENGAGED IN ANY WRONGDOING. ..................................................................3

    II.     RELATORS FAIL TO SUFFICIENTLY ALLEGE SCIENTER. ..........................6

    III.    RELATORS' CLAIMS AGAINST MR. FITZPATRICK ARE PRECLUDED BY THE PUBLIC DISCLOSURE BAR.....................................................................7

    IV.    MR. FITZPATRICK SHOULD BE DISMISSED FROM THE CASE WITH PREJUDICE. ...........................................................................................................9

CONCLUSION....................................................................................................................... 9

REQUEST FOR ORAL ARGUMENT ...................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Bender v. N. Am. Telecomm., Inc.*,
    686 F. Supp. 2d 46 (D.D.C. 2010) ............................................................................6

*Bonilla v. Trebol Motors Corp.*,
    150 F.3d 77 (1st Cir. 1998) .......................................................................................3

*United States ex rel. Duxbury v. Ortho Biotech Prod., L.P.*,
    579 F.3d 13 (1st Cir. 2009) .......................................................................................5

*United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*,
    713 F.3d 662 (1st Cir. 2013) .....................................................................................8

*Fishbaum v. Liz Claiborne, Inc.*,
    No. 98-9396, 1999 WL 568023 (2d Cir. July 27, 1999) ...........................................5

*United States ex rel. Gagne v. City of Worcester*,
    565 F.3d 40 (1st Cir. 2009) .......................................................................................9

*Harrington v. Tetraphase Pharm. Inc.*,
    No. CV 16-10133-LTS, 2017 WL 1946305 (D. Mass. May 9, 2017) .......................5

*United States ex. rel. Kelly v. Novartis Pharm. Corp.*,
    827 F.3d 5 (1st Cir. 2016) .........................................................................................5

*United States ex rel. Poteet v. Bahler Med., Inc.*,
    619 F.3d 104 (1st Cir. 2010) .....................................................................................7

*Seal 1 v. Seal A*,
    255 F.3d 1154 (9th Cir. 2001) ..................................................................................7

*United States v. Fulton Cty., Georgia*,
    No. 1:14-CV-4071-WSD, 2016 WL 4158392 (N.D. Ga. Aug. 5, 2016) ...................6

*United States v. New York Soc. for the Relief of the Ruptured & Crippled,
Maintaining the Hosp. for Special Surgery*,
    No. 07 CIV. 292 PKC, 2014 WL 3905742 (S.D.N.Y. Aug. 7, 2014) .......................6

*United States v. Sci. Applications Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) ................................................................................6

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ............................................................................................6

*Stiegele ex rel. Viisage Tech., Inc. v. Bailey*,
   No. 05-10677MLW, 2007 WL 4197496 (D. Mass. Aug. 23, 2007) .........................................5

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) ....................................................................................8

**Statutes**

31 U.S.C. § 3730 ......................................................................................................7, 8

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................1, 3, 5

Fed. R. Civ. P. 12(b)(6) ...............................................................................................3, 5

Mark J. Fitzpatrick Ownership Report, U.S. Securities and Exchange
   Commission, https://www.sec.gov/cgi-bin/own-
   disp?action=getowner&CIK=0001520265 ..................................................................5, 8

Transcript of Q2 2013 Aegerion Investor Call (July 30, 2013),
   https://www.nasdaq.com/aspx/call-
   transcript.aspx?StoryId=1586952&Title=aegerion-pharmaceuticals-
   management-discusses-q2-2013-results-earnings-call-transcript ...........................................8

Transcript of Q2 2014 Aegerion Investor Call (July 29, 2014),
   https://www.nasdaq.com/aspx/call-
   transcript.aspx?StoryId=2355815&Title=aegerion-pharmaceuticals-aegr-ceo-
   marc-beer-on-q2-2014-results-earnings-call-transcript .........................................................8

The crux of Relators' claim is that Aegerion engaged in an off-label marketing scheme in violation of the False Claims Act ("FCA"). However, Mark Fitzpatrick, Aegerion's chief financial officer from May 2011 through June 2015, played no role in the marketing of Juxtapid. There is no allegation that he approved, reviewed, or even used promotional materials or that he ever spoke to any physicians about prescribing Juxtapid. He was not even in the same department as Relators—all former Aegerion sales employees—and the Second Amended Complaint ("SAC") does not allege that he ever spoke with Relators, let alone that they directly witnessed anything he did at Aegerion.

Relators' allegations against Mr. Fitzpatrick—alleged for the first time in the SAC filed in September 2017, after the government settled with the company—amount to little more than (i) he attended meetings where others made purportedly false statements that had nothing to do with Aegerion's promotion of Juxtapid, and (ii) he sold stock, which Relators contend shows that he somehow "condoned" and "endorsed" the activities of others, even though the sales were pursuant to a pre-scheduled 10b5-1 plan. An FCA complaint cannot continue based on such scant allegations. In short, the claims against Mr. Fitzpatrick should be dismissed with prejudice for at least the following reasons:

*First*, the specific allegations against Mr. Fitzpatrick, even when taken as true, do not allege that he participated in the alleged off-label marketing scheme or that he in any way knowingly caused false claims to be submitted.

*Second*, Relators cannot meet Rule 9(b)'s particularity requirement because they fail to sufficiently allege that Mr. Fitzpatrick acted with scienter.

*Third*, Relators' claims are precluded by the public disclosure bar. All of Relators' claims against Mr. Fitzpatrick—not included in a complaint until after the United States settled with the

company—are based on publicly available information, and Relators cannot be the original source because they do not even allege having heard, seen, or interacted with Mr. Fitzpatrick.[1]

## BACKGROUND AS TO MR. FITZPATRICK

### I.    TIMING OF ALLEGATIONS IN THIS *QUI TAM* ACTION

Mr. Fitzpatrick was not named in either the 2013 Complaint (dkt. 3) or the 2014 First Amended Complaint (dkt. 12), and the only mention of him in either prior complaint was in a single paragraph that identified his job title.  Compl. ¶ 67, FAC ¶ 70.  Relators added him and seven others as defendants on September 27, 2017, five days after the United States filed its settlement with Aegerion (dkt. 63), and over three years after the United States began its investigation, *see* SAC ¶ 5.  Significantly, after its very extensive investigation, the United States declined to intervene.

### II.    ALLEGATIONS CONCERNING MR. FITZPATRICK

Relators' core allegation is that Aegerion engaged in an off-label marketing scheme.  Of the 394 paragraphs in the SAC, only seven relate to Mr. Fitzpatrick, only three make specific allegations about him, and none allege that he participated in the off-label marketing scheme:

- One paragraph claims that Mr. Fitzpatrick was on an investor call in July 2013 when Marc Beer announced that the company "no longer plan[ned] to provide guidance for the number of patients on therapy at year end."  SAC ¶ 120.  Relators allege that Mr. Fitzpatrick "would have known and understood the significance of Beer's change of policy."  *Id.*

- The second, after summarily asserting that Mr. Fitzpatrick is jointly and severally liable for damages and for making false statements (SAC ¶ 174), claims that Mr. Fitzpatrick was "complicit in a scheme to obfuscate patient numbers to the investing public."  SAC ¶ 175.

- The third paragraph concerns Mr. Fitzpatrick's participation on an investor conference call in July 2014 (SAC ¶ 176)—months after the United States had

---

[1] Mr. Fitzpatrick incorporates by reference the arguments raised in the Defendants' Joint Memorandum of Law.

begun its investigation.  SAC ¶ 5.  In this paragraph, Relators claim that "[d]uring those quarterly investor calls, Fitzpatrick added his seal of approval to the Company's 'glowing financial predictions', which, as Dr. Wolfe predicted, 'ultimately depend[ed] on sales for off-label use.'"  SAC ¶ 176.[2]

Tellingly, the SAC does not contain a single reference to Mr. Fitzpatrick playing a role in marketing Juxtapid (nor could it).  Even if he participated in a scheme to "obfuscate patient numbers to the investing public" (which he did not), Relators allege no connection between that conduct and participating in the alleged scheme to market Juxtapid off-label.[3]  Indeed, the SAC does not make *any* specific allegation that Mr. Fitzpatrick did anything to knowingly participate in a scheme to market Juxtapid off-label.

## ARGUMENT

### I. RELATORS DO NOT SUFFICIENTLY ALLEGE THAT MR. FITZPATRICK ENGAGED IN ANY WRONGDOING.

None of the specific allegations against Mr. Fitzpatrick supports Relators' FCA claims, either under Rule 9(b) or 12(b)(6).  There is not a single allegation that Mr. Fitzpatrick ever spoke to a doctor, sales person (including Relators), or government payer, or that he played any role in marketing Juxtapid.  Relators allege that he participated in quarterly investor calls during which the company's financial condition was discussed, but do not allege how being on such calls amounts to participation in a purported scheme to market off-label.  *See Bonilla v. Trebol Motors*

---

[2] Dr. Wolfe was not a participant on the investor calls, nor did he say that the company's glowing financial predictions in 2013 ultimately depended on sales for off-label use.  Rather, Dr. Wolfe—the Founder and Senior Adviser of Public Citizen's Health Research Group (SAC ¶ 71)—made the statements at the October 17, 2012 meeting between Aegerion and the FDA's Endocrinologic and Metabolic Drugs Advisory Committee ("EMDAC").

[3] Relators make one conclusory allegation that Aegerion made statements about prevalence "in order to cover up off-label marketing."  SAC ¶ 90.  This is certainly not a reasonable link.  Relators have no rational basis to make such a bald allegation, which is confirmed by the next sentence in that paragraph:  "Without inflated estimates of the patient population, an alert observer would realize that the Company would very soon saturate the tiny U.S. market and have no room for growth."  *Id.*  Beyond being a non-existent stretch, this allegation says nothing about Mr. Fitzpatrick.

*Corp.*, 150 F.3d 77, 81 (1st Cir. 1998) ("[T]he complaint did not point out the alleged connection between the individual [ ] defendants and any specific act of wrongdoing . . . ").  For example:

***Second Quarter 2013 Earnings Call***[4]—At the second quarter earnings call in 2013, Relators claim that Mr. Beer "announced that: 'Consistent with our plan to discontinue offering specific launch metrics other than sales, we no longer plan to provide guidance for the number of patients on therapy at year end.'"  SAC ¶ 120.  Relators claim that "[Mr.] Beer was hoping to distract observers from the obvious fact that the Company's explosive out-of-the-gate growth was driven by off-label sales."  *Id*.  Relators then shift their focus to Mr. Fitzpatrick, claiming that he was present on the call and "would have known and understood the significance" of Mr. Beer's statement.  *Id*.; *see also id*. at ¶ 175.  Critically, there is no allegation that what Mr. Beer said was false or misleading or how *Mr. Beer*'s statement or decision on providing information about the number of patients means that *Mr. Fitzpatrick* committed an FCA violation.  There is no way that a statement made to investors about how Aegerion "no longer plan[ned] to provide guidance for the number of patients on therapy" in any way shows that Mr. Fitzpatrick participated in a scheme to market off-label.

***Second Quarter 2014 Earnings Call***—The allegation regarding Mr. Fitzpatrick's statements at the second quarter 2014 earnings call (made months after the United States had begun its investigation, SAC ¶ 5) similarly fail to support his participation in a scheme to market off-label.  In the only other paragraph that alleges Mr. Fitzpatrick did anything, the SAC alleged that he stated that "[b]ased upon [Aegerion's] current forecasts, we believe the upfront investments

---

[4] As discussed in the Joint Brief, this Court may consider transcripts of investor calls and Mr. Fitzpatrick's stock trading history (*see infra* pp. 7-9), as documents "explicitly relied upon in the complaint" or as a matter of judicial notice.  Joint Br. at 4 n.5.

we've made have optimized our U.S. commercial operations to a scale that we expect will support our U.S. growth for the next 3 years, but we will continually asses our size and investments related to the U.S. HoFH market opportunity." SAC ¶ 176.

That is it—out of this massive SAC, these are the only substantive allegations against Mr. Fitzpatrick, and none alleges that Mr. Fitzpatrick was involved in developing Aegerion's promotional campaign or that he ever communicated with Relators, doctors, sales staff, or government payers.[5] All that Relators can muster is a vague and summarily asserted allegation that "Defendants repeatedly instructed Relators and other Aegerion sales personnel to promote Juxtapid for off-label . . . uses." SAC ¶ 4. But they do not identify a single instance when Mr. Fitzpatrick allegedly did so, and this assertion should be given no weight under Rule 12(b)(6) or 9(b). *United States ex rel. Duxbury v. Ortho Biotech Prod., L.P.*, 579 F.3d 13, 28 (1st Cir. 2009) (the Court is "under no obligation to credit [Relators'] conclusory allegations"); *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) (conclusory allegations fail to satisfy Rule 9(b)).

---

[5] Relators also claim that the profits Mr. Fitzpatrick earned on his Aegerion stock sales, done pursuant to a pre-scheduled Rule 10b5-1 plan, "are also evidence that Defendant Mr. Fitzpatrick condoned and encouraged the illegal activity of *other* Defendants in this case." SAC ¶ 178 (emphasis added). The mere selling of stock for a profit is well below what is required to support a fraud claim, especially when done under a 10b5-1 plan. *Harrington v. Tetraphase Pharm. Inc.*, No. CV 16-10133-LTS, 2017 WL 1946305, at *7 (D. Mass. May 9, 2017) (where 10b5-1 plan predated the beginning of the class period, no scienter could be inferred from defendant's trades); *Stiegele ex rel. Viisage Tech., Inc. v. Bailey*, No. 05-10677MLW, 2007 WL 4197496, at *13 (D. Mass. Aug. 23, 2007) ("[T]he presence of a trading plan rebuts an inference of scienter and supports the reasonable inference that stock sales were pre-scheduled and not suspicious.") (citing *Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 1999 WL 568023, at *4 (2d Cir. July 27, 1999)). (Mr. Fitzpatrick disclosed that these sales were made pursuant to a 10b5-1 plan in his SEC Form 4 disclosures, publicly available at Mark J. Fitzpatrick Ownership Report, U.S. Securities and Exchange Commission, https://www.sec.gov/cgi-bin/own-disp?action=getowner&CIK=0001520265). Indeed, if that were all that was required to show fraud, every Aegerion shareholder who profitably sold stock during this period could be subject to an FCA claim. Relators seemingly know this, since they use the stock sale as evidence that Mr. Fitzpatrick purportedly "condoned and encouraged the illegal activity of *other* Defendants." Even if that *might* support Relators' conspiracy claim—it does not—the conspiracy claim is barred by the intracorporate conspiracy doctrine. Joint Br. at 19-20.

Accordingly, Relators' claims must be dismissed. *See United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07 CIV. 292 PKC, 2014 WL 3905742, at *20 (S.D.N.Y. Aug. 7, 2014) (dismissing FCA claim where complaint failed to plead misconduct of each individual defendant); *United States ex rel. Bender v. N. Am. Telecomm., Inc.*, 686 F. Supp. 2d 46, 50, 54 (D.D.C. 2010) (dismissing FCA claim where Relators failed to allege the roles individual defendants played in the fraud).

## II.       RELATORS FAIL TO SUFFICIENTLY ALLEGE SCIENTER.

The FCA requires "'strict enforcement of [its] . . . scienter requirement[].'" *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) (quoting *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)). Here, Relators fail to allege even once that Mr. Fitzpatrick made a false statement, let alone that he knew that the statement was false or that it was material to the government's payment of claims.

At most, Relators mirror the FCA and claim that Mr. Fitzpatrick "had actual knowledge of the falsity of the claims . . . , and/or he acted with deliberate ignorance of the truth or falsity of these claims and/or acted in reckless disregard of the truth or falsity of these claims." SAC ¶ 177. This parroting of the FCA's requirements is insufficient to survive dismissal. *See United States v. Fulton Cty., Georgia*, No. 1:14-CV-4071-WSD, 2016 WL 4158392, at *11 n.16 (N.D. Ga. Aug. 5, 2016) ("Except for two conclusory assertions that simply parrot language from the FCA, the Complaint does not allege, even in general terms, that Defendants knew their claims were false."). There are simply no allegations that could possibly support a finding that Mr. Fitzpatrick knowingly participated in a scheme to market Juxtapid off-label.

**III.      RELATORS' CLAIMS AGAINST MR. FITZPATRICK ARE PRECLUDED BY THE PUBLIC DISCLOSURE BAR.**

Relators' claims cannot be allowed to proceed for the separate and independent reason that they are barred by the public disclosure bar:  every allegation against Mr. Fitzpatrick was part of a public record prior to Relators making their allegations against him.  And everything Relators allege was already known to the Government.  As detailed in the Joint Brief (at pp. 25-30), the factual allegations underlying Relators' FCA claim against all Defendants is "substantially the same" as allegations or transactions that were publicly disclosed and are from sources proscribed by the FCA, and the Court can rule on this basis alone without considering Relators' other pleading deficiencies.  31 U.S.C. § 3730(e)(4)(A).

This is especially true for Mr. Fitzpatrick.  By the time Relators added Mr. Fitzpatrick in September 2017, the United States had already spent years investigating Aegerion.  Among other things, the FDA had issued a warning letter to Aegerion about off-label marketing (SAC ¶ 134), the U.S. Attorney had been investigating Aegerion for over three years (SAC ¶ 5), and the United States had already settled with the company.  Adding Mr. Fitzpatrick and the purported "additional false claims"—which are unconnected to any Relators' personal knowledge—does nothing to protect the government's interest.  *See Seal 1 v. Seal A*, 255 F.3d 1154, 1163 (9th Cir. 2001) (finding that an FCA relator who relied on a government investigation triggered by his initial *qui tam* complaint to bring claims against a new defendant was barred from maintaining suit).  This case is the very definition of a "parasitic" suit that the public disclosure bar is designed to prevent. *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 111 (1st Cir. 2010) (The likelihood of "parasitic qui tam actions" is high when "the materials necessary to ground an inference of fraud are generally available to the public . . . ").

Moreover, all of Relators' allegations against Mr. Fitzpatrick are based on publicly available information. The allegations against Mr. Fitzpatrick consist of: (i) his presence at and statements made during investor calls (SAC ¶¶ 120, 175-76);[6] and (ii) the fact that Mr. Fitzpatrick sold Aegerion stock (SAC ¶ 178).[7] Joint Br. at 26-28.

The only exception to the public disclosure bar is if Relators are the original source of the publicly available information. But Relators are not, especially as to the information applicable to Mr. Fitzpatrick. An "original source" must have "**knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions**, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B) (emphasis added); *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016). A relator's knowledge is independent of the publicly disclosed allegations when it "did not depend on the public disclosure" or when it "constitutes a use of an individual's unique expertise or training to conclude that the material elements already in the public domain constitute a false claim." *United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 973-74 (1st Cir. 2013) (internal quotation marks and citation omitted).

Relators cannot satisfy either the independence or materiality requirements, despite their conclusory assertion that they are the original source. *See* SAC ¶ 26. They are former Aegerion

---

[6] *See* Transcript of Q2 2013 Aegerion Investor Call (July 30, 2013), https://www.nasdaq.com/aspx/call-transcript.aspx?StoryId=1586952&Title=aegerion-pharmaceuticals-management-discusses-q2-2013-results-earnings-call-transcript; Transcript of Q2 2014 Aegerion Investor Call (July 29, 2014), https://www.nasdaq.com/aspx/call-transcript.aspx?StoryId=2355815&Title=aegerion-pharmaceuticals-aegr-ceo-marc-beer-on-q2-2014-results-earnings-call-transcript.

[7] Mark J. Fitzpatrick Ownership Report, U.S. Securities and Exchange Commission, https://www.sec.gov/cgi-bin/own-disp?action=getowner&CIK=0001520265.

sales representatives (*see* SAC ¶¶ 8-10) who would have had no reason to participate in or listen to the earnings calls.  And they do not allege how they learned of any of the information related to Mr. Fitzpatrick included in the SAC.  Relators do not even allege any facts that could give rise to an inference that they have any independent knowledge of the earnings calls.[8]

Relators' knowledge adds nothing to the publicly disclosed information because their knowledge is identical to that information and likely comes from the same public sources.  For this reason, too, the Court should dismiss claims against Mr. Fitzpatrick.

## IV.      MR. FITZPATRICK SHOULD BE DISMISSED FROM THE CASE WITH PREJUDICE.

The deficiencies in Relators' claims against Mr. Fitzpatrick are incurable.  Relators never communicated with Mr. Fitzpatrick, let alone personally witnessed any wrongdoing, and their allegations are based on publicly available information.  Relators had over four years to develop allegations against Mr. Fitzpatrick, yet their scant allegations are conclusory and do not allege that Mr. Fitzpatrick knowingly participated in a scheme to market Juxtapid off-label.  For these reasons, Relators should not be permitted a fourth chance to plead a futile claim.  *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009).

## CONCLUSION

For these reasons and those in the Joint Brief, the Court should dismiss Mr. Fitzpatrick from the case with prejudice.

---

[8] Relators make one, general, unsubstantiated allegation that they "are the original source of the information and allegations contained in the" Complaints.  SAC ¶ 26.

Dated:  June 19, 2018                    Respectfully submitted,

                                         MARK FITZPATRICK,

                                         By his attorneys

                                         /s/ Jonathan L. Kotlier _____
                                         Jonathan L. Kotlier (BBO# 545491)
                                             jkotlier@nutter.com
                                         Ian D. Roffman (BBO# 637564)
                                             iroffman@nutter.com
                                         Nutter, McClennen & Fish, LLP
                                         Seaport West, 155 Seaport Blvd.
                                         Boston, Massachusetts 02210
                                         Telephone:   (617) 439-2000
                                         Facsimile:   (617) 310-9000

## REQUEST FOR ORAL ARGUMENT

Mr. Fitzpatrick requests oral argument on this matter, as he believes that oral argument would be helpful to the Court.  *See* L.R. 7.1(d).

## CERTIFICATE OF SERVICE

I certify that, on June 19, 2018, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


                                         /s/ Jonathan L. Kotlier _____
                                         Jonathan L. Kotlier

3867424